# MARSHALL *v.* AUGUSTA.

WILLS ; VESTED REMAINDERS ; ESTOPPEL.

A testator, after devising his entire estate to his wife, for life, with the remainder over to his four children, share and share alike, by a codicil directed that one of the children, a daughter, should have certain of the real estate immediately upon her mother's death, and that such real estate and the daughter's share of the property, on the death of her mother, as directed by the will, should be the daughter's for life, and after her death should go to her child or children. After the death of the testator's widow the four children attempted to make a partition, by deed, of the property among themselves, W. M. N. and F. N. being assigned one portion, as tenants in common ; D. P. N. one portion, in fee simple in severalty ; and C. M., a daughter, a portion, in fee simple in severalty. Subsequently, the daughter C. M. having died, proceedings in equity were instituted by the widow of F. N. and children of C. M. for the partition and sale of those portions of the estate which had been assigned to D. P. N. and C. M. in the attempted partition, and such proceedings resulted in the sale of the property involved in them, and the proceeds were then distributed among all of the then living descendants of the testator, in proportion to their respective interests. Thereafter, an action of ejectment was brought by the grantee of three of the five children of C. M., to recover their interest in that portion of the property which had been assigned to W. M. N. and F. N., as tenants in common, in the attempted partition among the four children of the testator. In this ejectment suit it was *held*:

1. That, under the will and codicil, the children of the testator's daughter C. M. took a vested remainder, in fee simple, in one-fourth undivided part of his property, which could not be divested or affected in any way by any action of their mother, in conjunction with the other children of the testator, in the attempted partition among themselves ; and,

2. That the action of the children of C. M. in the equity suits mentioned did not estop them, or their grantee, from maintaining the ejectment suit.

No. 384. Submitted December 12, 1894. Decided January 8, 1895.

HEARING on an appeal by the plaintiff from a judgment

entered upon a verdict for the defendant, directed by the court, in an action of ejectment. *Reversed.*

The COURT in its opinion stated the case as follows:

This is a suit in ejectment to recover an undivided interest in part of lot No. 13, in square No. 818, in the city of Washington.

One Benjamin Newton, who died on December 19, 1863, was the owner, in fee simple, of the whole of said lot No. 13 at the time of his death. By his last will and testament, executed oñ January 27, 1863, he devised and bequeathed all his estate to his wife Henrietta, for her life, and after her death to his four children, as tenants in common. The provision of the will that bears upon the subject of controversy in this suit is as follows:

"Second. After the death of my wife Henrietta aforesaid, I direct that all my property then left and remaining shall be equally divided, share and share alike, between my four children, should they then be all alive; if not, then among those living; but the share of my son Frank, if he is then living, I direct shall be placed in the hands of a trustee (to be appointed by the Orphans' Court when the time shall arrive), and the interest of said portion only shall be paid to him half yearly during his natural life; and at his death, if married and had children, then to said children, share and share alike; if no children living, then the portion of my said son Frank shall be equally divided at his death between my other children, share and share alike."

On November 19, 1863, a month before his death, Benjamin Newton executed a codicil to this will, which is in the following terms:

"I now direct that my daughter Charity shall have the south one of my two brick houses, immediately on the death of my said wife Henrietta; and I further direct that the said house and her share of my property on the death of her mother, as directed in my will of the 27th of January,

1863, shall be for her sole use, and subject to her exclusive control, except for sale, during her natural life and, after her death, then to her child or children in just proportions, separate, apart, and beyond the control of the husband which she now has, or may hereafter have."

Henrietta Newton survived her husband only a short time, dying in the same month of December, 1863, and the four children of Benjamin Newton thereupon became entitled to the possession of his estate, in accordance with the terms of his will and of the codicil thereto. These four children comprised three sons, Francis (or Frank) Newton, William M. Newton, and Daniel P. Newton; and one daughter, Charity Marshall. Of the three sons, one, the last named, Daniel P. Newton, died March 29, 1875, intestate, unmarried, and without issue; and his estate thereupon became vested in his brothers and sister. Another of the sons, Francis or Frank Newton, died March 12, 1887, without issue, but leaving a wife surviving him, whether testate or intestate does not appear, and is of no consequence in this suit. The remaining son, William M. Newton, died November 23, 1886, leaving as his heirs at law two children, William I. Newton and Benjamin F. Newton. And Charity Marshall, the only daughter of Benjamin Newton, died October 18, 1873, leaving surviving her a husband, who died within a year thereafter, and five children, namely: William H. Marshall, the plaintiff in this cause, born August 11, 1860; Benjamin C. Marshall, born December 27, 1861; Henrietta Marshall, born May 14, 1867; Hattie Marshall, born May 20, 1869; and Alice Marshall, born April 1, 1872.

On or about February 14, 1871, the children of Benjamin Newton assumed to make a partition of his estate, or of some part of it, between themselves by voluntary deeds of partition. A portion was set apart in fee simple to William M. Newton and Francis Newton, as tenants in common; a portion to Charity Marshall in fee simple in severalty; and a portion to Daniel P. Newton in fee simple in severalty.

A portion also was conveyed in fee simple by the four children of Benjamin Newton to trustees to sell for the payment of taxes and certain expenses and a division of the residue of the proceeds of sale between the grantors; and this portion the trustees, purporting to act in pursuance of the trust, sold and conveyed to William M. Newton, within two months thereafter. These deeds of partition all bore date on the 14th of February, 1871.

The portion thus assigned to William M. Newton and Francis Newton, as tenants in common, and which comprised the land described and sued for in the declaration in this cause, was mortgaged by them on the 29th of March, 1871, and was subsequently sold out under the mortgage and purchased by Alexander T. Augusta, the original defendant in the cause.

On March 16, 1887, a bill in equity was filed in the Supreme Court of the District of Columbia in the name of the widow of Francis Newton and of the five children of Charity Marshall, as complainants, both Francis Newton and Charity Marshall being then dead, against the widow and children of William M. Newton, also then deceased, as defendants, "to sell the interest of said parties under the said will and codicil of said Benjamin Newton in and to part of lot 11, in square 818, being the same property described in the deed herein before referred to from Francis Newton, William M. Newton and his wife, Charity Marshall and her husband, to Daniel P. Newton" (one of the partition deeds that have have been mentioned). And on July 11, 1888, there was filed in the same court another equity suit by the same complainants against the same defendants "to sell the interest of said parties under the said will and codicil of Benjamin Newton, the testator, in parts of lots 11 and 12, in square 818, being the same property described in the deed hereinbefore referred to from Francis, William M. and his wife, and Daniel P. Newton, to Charity Marshall" (one of the deeds of partition that have been mentioned). The proceeds

of sale in both of these suits were divided among all the then living descendants of Benjamin Newton, the testator, " in proportion to their respective interests therein."

Subsequently, on November 1,1890, Benjamin C. Marshall, Henrietta Marshall, and Hattie Marshall, three of the five children of Charity Marshall, the youngest of these children, Alice Marshall, being yet a minor, conveyed to their oldest brother, William H. Marshall, the plaintiff in this cause, all their interest in the property involved in this suit. And thereupon this suit was instituted by William H. Marshall to recover four-fifths of the interest of Charity Marshall, which was one-fourth of the whole, in the property mentioned in the declaration in this suit, which was the same property that had been sought in the attempted partition to be assigned to William M. Newton and Francis Newton. The interest, therefore, sought to be recovered is one-fifth of the whole property.

The declaration is the ordinary declaration in ejectment, containing two counts, one for possession and the other for mesne profits. The defendant pleaded the general issue to both counts, and to the second also a plea of the statute of limitations.

At the trial, the plaintiff proved title in Benjamin Newton, the due execution of his will and codicil that have been mentioned, his death, the death of his wife; the names and ages and times of death of his children, as hereinbefore stated; and the names and ages of the children (the heirs at law) of Charity Marshall; also the conveyance to the plaintiff of their interest by three of the other four children of Charity Marshall. He also proved the possession of the property by Alexander T. Augusta at the time of the institution of the suit, on November 18, 1890; the death of Augusta on December 21, 1890; and the revival of the suit against his widow and devisee, the present defendant, Mary O. Augusta, who entered into possession of the property upon the death of her husband. Some proof of the rental

value of the property was also adduced. And it was also shown that no change had been made in the improvements on the property since its purchase by Augusta in 1874.

The defendant introduced in evidence the partition deeds and deeds executed in pursuance thereof that have been mentioned; and also the two equity proceedings, to which reference has been made. But beyond the statement in the record that these two suits were instituted in order to procure a sale of the interest of the parties under the will and codicil of Benjamin Newton, we have no means to determine the purpose and scope of these proceedings, inas-- much as neither the proceedings themselves nor any abstract of them is given.

The plaintiff in rebuttal proved that not until after the termination of the two equity suits mentioned did the children of Charity Marshall have any knowledge of the partition deeds to which reference has been made.

Instructions were asked on both sides—one on behalf of the defendant that the jury should be peremptorily directed to render a verdict for the defendant, and one on behalf of the plaintiff that, if the jury should find the facts to be as the plaintiff's evidence tended to show, their verdict should be for the plaintiff. The trial court refused the plaintiff's instruction, and granted that requested by the defendant; and the verdict and judgment having been for the defendant, under this instruction, the plaintiff has appealed to this court upon exceptions duly taken.

*Mr. Eugene F. Arnold* and *Mr. Irving Williamson* for the appellant:

1. The language of the codicil created a vested remainder in Charity Marshall's children. The title vested in them at the death of the testator in 1863, but the enjoyment thereof was postponed until the death of their mother. The remainder having so vested in them in 1863, it was not divested by the so-called "voluntary partition," made by the

children of the testator in 1871.  *Doe, ex dem. Poor*, v. *Considine*, 6 Wall. 458 ; *Richardson* v. *Penicks*, 1 App. D. C. 261; *O'Brien* v. *Dougherty*, 1 App. D. C. 155 : *McArthur* v. *Scott*, 113 U. S. 379; *Cropley* v. *Cooper*, 19 Wall. 167; *Thaw* v. *Ritchie*, 136 U. S. 519, 545 ; *Meyers* v. *Adler*, 6 Mackey, 218.

2. The words of the will, " Equally divided, share and share alike," import a tenancy in common.  *Jackson, ex dem. Hunt* v. *Luquere*, 5 Cow. 228 ; *Fisher* v. *Wigg*, 1 P. Wms. 14 ; *Derr* v. *Gaskin*, 1 Cowp. 660; *Owen* v. *Owen*, 1 Atk. 494 ; *Heathe* v. *Heathe*, 2 Atk. 123 ; *Haws* v. *Haws*, 3 Atk. 525, 731 ; *Briscoe* v. *Magee*, 1 J. J. M. (Ky.) 371 ; *Emerson* v. *Cutler*, 14 Pick. 114 ; Freeman on Coten. and Part., Sec 23.

3. The partition by the life tenant does not bind the estate of the remaindermen.  2 Washb. Real Prop. 586 ; Tied. Real Prop., Sec. 400 ; *Hill* v. *Roderick*, 4 W. & S. 221 ; *Buxton* v. *Bowen*, 2 W. & M. 365 ; *Austin* v. *Railroad*, 45 Vt. 215 ; *Smith* v. *Cooper*, 59 Ala. 494; *Reeves* v. *Reeves*, 6 N. J. Eq. 156 ; Freeman on Coten. and Part., Sec. 416 *et seq.* ; *McArthur* v. *Scott*, 113 U. S. 404; *Sullivan* v. *Sullivan*, 66 N. Y. 39 ; *Barnig* v. *Nash*, 1 V. & B. 551; *Wills* v. *Slade*, 6 Ves. 494.

A vested remainderman not a party to the partition suit is not bound by the decree.  Freeman on Coten. and Part., Secs. 463, 467, 482, 553 ; *Barney* v. *Baltimore*, 6 Wall. 280 ; *Shields* v. *Barrow*, 17 How. 130 ; *Marshall* v. *Beverly*, 5 Wheat. 313 ; *Downin* v. *Sprecher*, 35 Md. 478.

4. Applying the law of estoppel to the circumstances appearing in this case the absurdity of any claim of estoppel will be manifest.  The estoppel sought to be suggested is an equitable estoppel and cannot be set up in an action of ejectment, where the title is in issue, but relief must be sought in equity.  *Branson* v. *Wirth*, 17 Wall. 32.  Estoppel cannot be set up where party claiming same knew facts or had same means of ascertaining the truth and the title.  *Steele* v. *Smelting Co.*, 106 U. S. 447 ; 2 Herman on Estoppel, 1092.

An estoppel *in pais* operates only between parties and privies. It operates only in favor of a person who has been *misled, to his injury, by reliance on the acts of the other*, and he only can set it up. 2 Herman on Estoppel, 884 *et seq.*; *Ketchum* v. *Duncan*, 96 U. S. 659; *Steele* v. *Smelting Co.*, 106 U. S. 447, 456; *Dickinson* v. *Colgrove*, 100 U. S. 578; *Austin* v. *Thomas*, 45 N. H. 113, 120; *Campbell* v. *Smith*, 9 Wis. 278, 281; *Wood* v. *Pennell*, 51 Me. 52, 60; 2 Pom. Eq. Juris., Secs. 805, 812. An estoppel *in pais* is not applicable to infants. *Sims* v. *Everhardt*, 102 U. S. 300, 313; *Prout* v. *Wiley*, 28 Mich. 164.

The act done by the Marshalls in 1887, when only two had reached their majority, and in 1888, when only three of them were adults, was certainly not an acquiescence in or ratification of the proceedings under which defendant claims title, for they had not that full and actual knowledge of all that is claimed to have been done, nor of their rights in the property until after the conclusion of the two equity suits relied upon by the defendant as constituting the acts of ratification or acquiescence. 2 Herman on Estoppel, 894; *Henshaw* v. *Bissell*, 18 Wall. 255, 271; *Buckingham* v. *Smith*, 10 Ohio, 288, 300; *Holmes* v. *Cromwell*, 73 N. C. 613, 627; *Ellsworth* v. *Ellsworth*, 33 Iowa, 164, 167.

*Messrs. Webb & Webb* for the appellee:

1. The will directs that all of the testator's property remaining after the death of his wife shall be divided among his four children, share and share alike. This is clearly a direction that upon the death of his wife his property, or the proceeds thereof, shall be divided equally among his children. This intention is not changed by the codicil, in which the testator, after giving his daughter Charity the south one of his two brick houses, directs that the said house and *her share of his property* shall be her's for life, remainder to her children. No other construction can be given this language but that it expresses an intention to limit the

interest of Charity in whatever portion of his property she took as her share under the provisions of his will, to a life estate, and to provide that, upon her death, her children shall receive the benefit of that portion of his property.

2. The testator moreover provided that his property should be divided among his four children, leaving them to choose the means and manner of making the division. They decided upon a voluntary partition, and divided the property between them by mutual deeds. In this division Charity received her full share, taking a life estate in the said portion and her children a vested remainder in fee. The testator clearly shows his intention of disposing of his whole estate in such a way that each child of his shall get a definite part, or share, thereof separate and distinct from the share of his other children.

3. The codicil cannot be construed to be a revocation of the will, and a direction that the entire estate should be kept intact until after the death of his daughter Charity: 1st. Because no such intention or direction is contained in the codicil. 2d. Because no one is appointed trustee to take care of the said estate, while it should remain undivided, *i. e.,* during the life of Charity, and it nowhere appears, in either the will or the codicil, that it was the intention of the testator to create such a trust. Moreover, when we consider the fact that he made his wife the sole executrix of his last will and testament, it is very evident that his intention was that, after her death, the estate should not be kept intact and undivided.

4. Under the terms of the will and codicil of Benjamin Newton, it is evident that his four children, upon the death of his wife, took an estate in fee simple in his entire property, with the exception of the house specifically devised to his daughter Charity, as tenants in common. These children, therefore, being seized as tenants in common of lands in this District, had a right to divide them, and any one of said children could have compelled a division or partition of the said property. Act of Maryland 1794, Ch. 60, Sec. 8.

Admitting for the sake of argument, that appellant was not bound by the partition of 1871, he became so by being a party to the proceedings instituted in 1887 and 1888. If he did not intend to become bound by the partition of 1871, he should háve instituted proceedings to have it set aside and a new partition made of the estate devised by Benjamin Newton among all the parties interested. Instead he institutes, with the other heirs of Daniel P. Newton and Charity Marshall, proceedings to sell and divide a large part of this property, claiming the same and all interest therein. Under these proceedings the said property was sold and the entire proceeds divided among the said parties. By this action he signified his intention to confirm and ratify the partition of 1871, and he is bound by said election. *Scholey* v. *Rew*, 23 Wall. 351; *Hyde* v. *Baldwin*, 17 Pick. 303; *Brinley* v. *Tibbets*, 7 Greenl. (Me.) 70; Herman on Estoppel, Sec. 1028.

5. A party cannot take the benefit of and repudiate the same instrument; for by accepting the benefit of such instrument he affirms it. Herman on Estoppel, Secs. 1045–1050; *Carll* v. *Oakley*, 97 N. Y. 634; *Radway* v. *Graham*, 4 Abb. Pr. 468; *Test* v. *Lash*, 76 Ind. 462; *Deford* v. *Mercer*, 24 Iowa, 122; *Kile* v. *Yellowhead*, 80 Ill. 211. A party cannot contest the validity of partition proceedings on the ground that he was a minor at the time, if since coming of age he has impliedly recognized the validity thereof. *Sewell* v. *Hebert*, 37 La. Ann. 155.

Mr. Justice Morris delivered the opinion of the Court:

Two principal questions are raised in the case: 1. Whether under the will and codicil of Benjamin Newton the children of Charity Marshall took a vested remainder, in fee simple, in one-fourth undivided part of his property which could not be divested or affected by any action of Charity Marshall, in conjunction with the other children of the testator; and 2. Whether the action of the children of Charity Marshall, in the equity suits that have been mentioned, constituted an

estoppel that should preclude them from maintaining the present suit.

1. With reference to the first question, it is argued on behalf of the appellant that, under the will and codicil of Benjamin Newton, his daughter Charity Marshall took only a life estate, and her children living at the time of the execution of the will and codicil a vested fee simple estate in remainder subject to open and let in other children thereafter born; that the interest which the life tenant and remaindermen took in the estate of the testator was an undivided one-fourth part, or portion; and that no partition entered into by the life tenant could bind the remaindermen. On the part of the appellee it is argued that by the will, without reference to the codicil, Charity Marshall received, or was to receive, one-fourth part of the testator's estate; that this estate was to be divided equally, upon his death, between his four children as tenants in common; that it was for them to divide the estate as they thought proper; and that the only effect of the codicil was to limit such portion as Charity Marshall might take to a life estate for herself and a vested remainder in fee in her children.

We fail to appreciate the force of the appellee's contention. It is ingenious, but unsound. The will and codicil of Benjamin Newton must be taken together; and so taken, they clearly and unmistakably evidence the purpose of the testator to modify his first disposition in favor of his daughter Charity Marshall, and to substitute for the absolute fee simple which was given to her by the original will a life estate for herself and a vested fee simple remainder in her children. This is nothing so unusual or so extraordinary that we are deprived of the guidance of the well-known rules of the law applicable to such cases. The estate which Charity Marshall and her children took was plainly an undivided interest in the estate of the testator; and there was no power given by the will and codicil, when taken together, to Charity Marshall, either expressly or by implication, to convert that undivided interest

of a tenancy in common into an estate in severalty in herself, as she attempted to do, or into an estate in severalty in herself and her children, as she might more plausibly have sought to do, so far at least as thereby to bind the rights of her children. What she did she purported to do exclusively for herself, and not at all for her children; and so far as we are informed by the record, it is not apparent that the piece of property which was set off to her, in fee simple, might not have been regarded as the equivalent in value of her life interest in the one-fourth undivided part of the testator's estate. The children were entirely ignored in this alleged partition transaction; and yet, if upon the death of Benjamin Newton they became immediately entitled to a vested remainder, in fee simple, in the one-fourth undivided part of his estate, as it is very clear to us they did, it is not quite apparent to us how that vested remainder could be shifted about at will, or even destroyed, as it would seem it was sought to do, by the action of a life tenant whose estate was in a measure antagonistic to their estate. Charity Marshall was not authorized to act for her children in the matter of the partition of the estate of Benjamin Newton; and there is nothing but inference, and no inference even of a positive character, to show that she ever assumed to act for them. If partition is desired in a case of this kind, the law points out very clearly the course that can be pursued for the purpose. It does not allow that infants should be deprived of a vested fee simple in remainder in an undivided estate by the action of a life tenant, taking a portion of that estate to herself, in fee simple.

We do not deem it necessary to pursue this question farther. We are strongly of opinion that the fee simple interest in the estate of Benjamin Newton, now claimed by the children of Charity Marshall, was not affected by the action of the latter in the attempted partition proceedings of February 14, 1871.

2. The question of estoppel would be a more serious question in this case, if the facts were sufficient to constitute an

estoppel.   But the equity proceedings offered in evidence by the defendant, and from which it is sought to raise such an estoppel, and to show an intention on the part of the children of Charity Marshall to confirm and ratify the partition proceedings made by her, fail utterly to show any facts upon which an estoppel can be raised.   Apart from the fact to which we have already adverted, that Charity Marshall, in the partition proceedings referred to, purported to act for herself alone, and not for her children, and that therefore there do not appear to have been any partition proceedings that could have been the subject of ratification by her children, there is nothing whatever in the equity proceedings that have been mentioned from which a ratification can be inferred.   The bills in both cases purport to have for their purpose the sale, presumably for the purpose of partition, of the interest of the parties in two specified pieces of property under the will and codicil of Benjamin Newton.   This statement, so far from being a ratification of the partition attempted by the deeds of February 14, 1871, should rather be regarded as a distinct and positive repudiation of any such partition. If it were the intention or the effect of these equity proceedings to ratify and confirm that partition, the property mentioned in the two bills should have been treated as the property of the persons to whom it had been assigned in the partition, and from whom, if the partition were valid, the parties to the two suits would have received it by inheritance, and not under the will and codicil of Benjamin Newton.   It is proved that not until after these suits had been determined did the children of Charity Marshall have any knowledge of the attempted partition of 1871 ; and it is not apparent that it would have made much difference if they had known of it, when they proceeded upon a theory totally inconsistent with any idea of the ratification with which it is now sought to charge them.   We are unable to see how a suit in equity between devisees and heirs at law of Benjamin Newton to sell real estate claimed by them to be vested in them from him, under his will and the codicil thereto, can be

construed into a ratification of a partition, alleged to have been made of his estate, when there is no reference to any such partition or to any claim of title from or through any partitioner thereunder. On the contrary, as we have intimated, if the children of Charity Marshall had distinctly sought to repudiate the partition, they could not well have done so more appropriately than was done in these suits.

It is very true that the bills of exception in this case set forth the fact, in connection with the first mentioned equity suit, that the property therein specified and desired to be sold was the same property that had been assigned to Daniel P. Newton by one of the partition deeds of 1871; and in connection with the second equity suit, that the property therein mentioned was the same that had been assigned to Charity Marshall by one of the same partition deeds. But so far as we can judge from the record, these identifications were made at the trial in the present cause, and not in the equity suits; and there is nothing to show that there is any reference whatever in the equity suits, direct or indirect, to the matter of the partition of 1871, or to the rights or claims of any person thereunder.

We fail, therefore, to find in this cause any ground for the application of the doctrine of estoppel. If the defendant has ground to believe, what the record before us does not show, that the children of Charity Marshall have received their just share of the estate of their grandfather, and that it would be inequitable for them to prosecute their claim to the property held by the defendant, the latter is not without remedy to procure appropriate relief.

We can find no law that in our opinion can sustain the ruling of the court below, and we must regard that ruling as erroneous. The prayer of the plaintiff should have been granted, and the prayer of the defendant refused. For this error *the judgment of that court must be reversed, with costs; and the cause must be remanded to that court with directions to set aside the verdict and to award a new trial; and it is so ordered.*